UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEW KING TAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>　　　　　　Defendants. | Case No.: 1:21-cv-08413-PAC |
| TRAVIS FLORIO, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>　　　　　　Defendants. | Case No.: 1:21-cv-08618-PAC |

| | |
|---|---|
| MICHAEL MERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>    Defendants. | Case No.: 1:21-cv-08752-PAC |
| MARK ULANCH, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>    Defendants. | Case No.: 1:21-cv-08897-PAC |
| ALMA FELIX, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>    Defendants. | Case No.: 1:21-cv-10286-PAC |

| | |
|---|---|
| ALISON SCULLY, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>   Defendants. | Case No.: 1:21-cv-10791-PAC |
| KEVIN LEE, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> v.<br><br>GOLDMAN SACHS GROUP INC. and MORGAN STANLEY,<br><br>   Defendants. | Case No.: 1:22-cv-00169-PAC |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS
THE SECOND AMENDED CLASS ACTION COMPLAINTS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

I. PLAINTIFFS DO NOT ALLEGE A TIPPEE CLAIM......................................................2

    A. Plaintiffs Fail to Allege that Archego was an Insider that
       Breached a Duty by Sharing Confidential Information. ........................................2

    B. Plaintiffs Do Not Allege the Necessary "Personal Benefit" to Archegos. ...........4

II. PLAINTIFFS DO NOT ALLEGE MISAPPROPRIATION ...............................................5

III. PLAINTIFFS FAIL TO ALLEGE KNOWLEDGE OF ANY BREACH OR INTENT TO
     DEFRAUD........................................................................................................................6

IV. PLAINTIFFS' SECTION 20A AND 20(a) CLAIMS FAIL ............................................10

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

### Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .......................................................................................... 8

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) ......................................................................... 5

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ....................................................................... 10

*Chiarella v. United States*,
    445 U.S. 222 (1980) .................................................................................................... 2

*Dirks v. SEC*,
    463 U.S. 646 (1983) ........................................................................................... 2, 3, 4, 5

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008) ......................................................................... 6

*Gruber v. Gilbertson*,
    2021 WL 2482109 (S.D.N.Y. June 17, 2021) ............................................................. 3

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) ...................................................................................... 10

*May Dep't Stores Co. v. Int'l Leasing Corp.*,
    1995 WL 656986 (S.D.N.Y. Nov. 8, 1995) ................................................................ 3

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983) ............................................................................................ 6

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010) ....................................................................... 10

*In re Revlon, Inc. Sec. Litig.*,
    2001 WL 293820 (S.D.N.Y. Mar. 27, 2001) .............................................................. 6

*Salman v. United States*,
    580 U.S. 39 (2016) ...................................................................................................... 6

*SEC v. Hwang*,
    2023 WL 6124041 (S.D.N.Y. Sept. 19, 2023) ............................................................ 8

*SEC v. McGee*,
    895 F. Supp. 2d 669 (E.D. Pa. 2012) .......................................................................... 3

*SEC v. Obus*,
    693 F.3d 276 (2d Cir. 2012) .................................................................................... 4, 5

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*,
  2014 WL 5026153 (S.D.N.Y. Sept. 29, 2014) ....................................................................... 8

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) .................................................................................. 10

*United States v. Carpenter*,
  791 F.2d 1024 (2d Cir. 1986) *aff'd by an equally divided court & aff'd in part on other grounds*, 484 U.S. 19 (1987) ............................................................................................................................. 3

*United States v. Chestman*,
  947 F.2d 551 (2d Cir. 1991) .................................................................................................. 2

*United States v. Martoma*,
  894 F.3d 64 (2d Cir. 2017) ............................................................................................ 3, 4, 5

*Veleron Holding, B.V. v. Morgan Stanley*,
  117 F. Supp. 3d 404 (S.D.N.Y. 2015) ................................................................................... 6

STATUTES & RULES

15 U.S.C.A. § 78t-1 ..................................................................................................................... 10

FED. R. CIV. P. 9(b) ....................................................................................................................... 8

FED R. CIV. P. 13d-3(a) .................................................................................................................. 3

OTHER AUTHORITIES

Victor Brudney, *Insiders, Outsiders, and Informational Advantages Under the Federal Securities Laws*,
  93 Harv. L. Rev. 322 (1979) .................................................................................................. 2

\* *Unless otherwise stated, abbreviations and capitalized terms have the same meanings as in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaints ("Mem."), all internal case citations and quotation marks are omitted, and all emphasis is added. As used in this brief, "Pl.Opp." refers to plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaints. All complaint citations are to the Second Amended Complaint in Tan v. Goldman Sachs Group, Inc., No. 1:21-cv-08413, ECF No. 66.*

# PRELIMINARY STATEMENT

Plaintiffs cannot recast defendants' arm's-length swap counterparty relationships with Archegos as "insider trading." As defendants have shown, the complaints' tippee theory fails at every step. Plaintiffs identify no duty of trust and confidence breached by Archegos when it allegedly shared its *own* information with defendants. Nor do they solve the defect that led this Court to dismiss plaintiffs' prior complaints, because they still allege that Archegos's goal in allegedly "tipping" was for defendants to *refrain* from trading and fail to plead that Archegos sought "personal benefits" from any alleged insider trading by defendants. As to misappropriation, plaintiffs cannot cure the fundamental defect this Court previously identified—that Archegos approved or had notice of all alleged trades—and so now speculate that defendants tipped unidentified preferred clients. But this gambit fails given the lack of any factual allegations about these entirely conjectural tips and trades.

Plaintiffs also fail to cure the other fatal deficiencies in their claims, including that defendants somehow "knew or should have known" that Archegos was breaching any duty. And the complaints fail to raise the required strong inference that defendants acted with scienter, particularly given the allegations (incorporated into the complaints via the DOJ Indictment and SEC Complaint upon which they are based) that Archegos was lying to its counterparties, including defendants. Any inference of scienter is further undercut by the fact that defendants were acting pursuant to their contractual arrangements, in conformity with industry practice. Finally, there is no showing that defendants controlled any relevant actor who engaged in purported insider trading, as Section 20(a) requires, and plaintiffs in the *Felix* and *Scully* cases did not trade contemporaneously with any purported insider trading by defendants, as Section 20A requires. Plaintiffs' claims should be dismissed with prejudice.

I.      **PLAINTIFFS DO NOT ALLEGE A TIPPEE CLAIM**

   A.   **Plaintiffs Fail to Allege that Archegos was an Insider that Breached a Duty by Sharing Confidential Information.**

Plaintiffs' tippee claims fail because the complaints do not allege that Archegos owed the issuers any duty to keep information about its *own* liquidity and exposure confidential. (Mem. 10-14.) Plaintiffs confirm that the alleged "tips" concerned the existence and size of Archegos's positions with defendants and general information about its liquidity and capital (Pl.Opp. 1, 18), which Archegos allegedly provided—as typical in swap trading relationships—so that defendants could determine whether and on what terms to make credit and trading services available (¶¶ 45, 59-60). Plaintiffs do not identify a single case holding that a party engages in insider trading by sharing its *own* information with its counterparties pursuant to industry-standard contractual arrangements. (Mem. 11-12.) Plaintiffs instead assert that "tipper-tippee liability attaches when an insider has 'material, nonpublic information'" (Pl.Opp. 14), but an insider trading duty "does not arise from the mere possession of nonpublic market information." *United States v. Chestman*, 947 F.2d 551, 565 (2d Cir. 1991) (quoting *Chiarella v. United States*, 445 U.S. 222, 235 (1980)).

Plaintiffs' contention that market information unknown to the issuer and owned by others can be the basis for insider trading (Pl.Opp. 12-13) simply identifies one aspect of the *misappropriation* theory.[1] It does not save plaintiffs' *classical* tipper theory, which requires trading on "corporate information" obtained by an insider in the context of a special relationship.

---

[1] Plaintiffs' citation to a supposedly "seminal" 1979 law review article (Pl.Opp. 13)—which *O'Hagan* cited in recognizing the *misappropriation* theory—is thus misplaced. *See* Victor Brudney, *Insiders, Outsiders, and Informational Advantages Under the Federal Securities Laws*, 93 Harv. L. Rev. 322, 330 (1979). Further, the article's thesis that the insider trading duty exists to "forbid[] exploiting unerodable informational advantages that one trader has over another," *id*. at 376, has been squarely rejected by the Supreme Court, which "repudiat[ed] any notion that all traders must enjoy equal information before trading." *Dirks v. SEC*, 463 U.S. 646, 657 (1983).

*See, e.g.*, *Dirks*, 463 U.S. at 659; *cf. United States v. Martoma*, 894 F.3d 64, 73 (2d Cir. 2017) ("*A firm's confidential information belongs to the firm itself,* and an insider *entrusted* with it has a fiduciary duty to use it only for firm purposes."). Plaintiffs' citations to *United States v. Carpenter* and *SEC v. McGee* are thus unpersuasive as those cases similarly addressed misappropriation. *See Carpenter*, 791 F.2d 1024, 1025-26, 1028 (2d Cir. 1986) (holding that defendant misappropriated information in breach of duty to his *employer, not* the issuers whose stock prices were affected), *aff'd by an equally divided court & aff'd in part on other grounds*, 484 U.S. 19, 24 (1987); *McGee*, 895 F. Supp. 2d 669, 681-82 (E.D. Pa. 2012) (stock broker misappropriated information from fellow Alcoholics Anonymous member with whom he had relationship of trust and confidence). Plaintiffs do not allege that Archegos misappropriated any information from the issuers, and their reliance on these misappropriation cases is unavailing.

Plaintiffs also cannot ground the required special relationship between Archegos and the issuers on its allegedly being their "dominant shareholder" (Pl.Opp. 13). That assertion depends on Archegos's purported control of defendants' hedges (*see* ¶ 167), and contradicts plaintiffs' repeated allegations that the hedges were defendants' "own, proprietary" positions, "distinct" from Archegos's holdings. (*E.g.*, ¶¶ 3, 17, 41, 169, 182-83, 186, 215; Pl.Opp. 1-2, 6, 10, 23.)[2]

Unable to allege facts supporting a viable breach of duty, plaintiffs invoke the Court's ruling that their prior complaints plausibly pled Archegos's insider status.[3] (Pl.Opp. 12 (citing Op. 17).) But whether Archegos was an "insider" of the issuers under Rule 13d-3(a) does not—as the Court recognized—"establish that Archegos had a more general duty of confidentiality."

---

[2] Plaintiffs also mischaracterize *Gruber v. Gilbertson*, 2021 WL 2482109, at *14 (S.D.N.Y. June 17, 2021) (Pl.Opp. 14 n.5), where, unlike here, the defendants' insider status and fiduciary duty were supported by multiple factors, including their involvement in day-to-day business and replacing the company's CEO. (Mem. 13.)

[3] "[T]he law of the case doctrine does not apply to dicta from prior holdings." *May Dep't Stores Co. v. Int'l Leasing Corp.*, 1995 WL 656986, at *2 (S.D.N.Y. Nov. 8, 1995); Op. 17-18 (dismissing tippee claim).

(Mem. 13 n.4 (citing Op. 16-17 n.6).) Even if Archegos were an "insider," it does not follow that Archegos could "tip" defendants with information about *itself* that it did not obtain via any special relationship of trust and confidence. (Mem. 12.) For insider trading, the duty that matters "arises from the relationship between parties . . . and not merely from one's ability to acquire information because of his position in the market." *Dirks*, 463 U.S. at 657-58.

### B. Plaintiffs Do Not Allege the Necessary "Personal Benefit" to Archegos.

Plaintiffs' opposition does not cure their failure to allege any "personal benefit" that Archegos sought or gained from sharing alleged MNPI with defendants, or even that it expected them to trade based on its alleged "tips." (Mem. 14-15; Op. 17-18 (dismissing tippee claims for failing to plead personal benefit).) Plaintiffs' complaints repeat the same fundamental allegation this Court previously held to be fatal to their claims: that Archegos provided information to defendants on March 25 to persuade them to *"refrain* from trading." (Op. 18 (emphasis in original); ¶¶ 153, 156.) Plaintiffs' assertion that Archegos *did* expect defendants to trade—just not immediately, and only subject to a future process Archegos would direct (Pl.Opp. 16-17)—is not based on any new factual pleading, and merely repackages the allegation this Court already rejected as insufficient: "that Archegos expected Defendants to . . . opt for a managed liquidation." (Op. 18.) Absent from the complaints is any well-pled allegation that Archegos intended to provide information defendants "could use to an advantage in trading." *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012). Moreover, plaintiffs do not explain how Archegos's supposed "tips" to encourage a coordinated sale would indicate to defendants that it had breached any fiduciary duty to the issuers, a critical pleading failure in light of plaintiffs' concession that the personal benefit inquiry serves only to assess whether a tip constitutes such a breach. (Pl.Opp. 15 (quoting *Martoma*, 894 F.3d at 73).)

The other purported benefits plaintiffs list—"reputational enhancements and

4

connections," "expanded financing," and "liquidity and anonymity" (Pl.Opp. 5, 15-16; ¶¶ 160-64)—are not alleged to have *any* connection to defendants' trading based on Archegos's "tips" in late March (Mem. 15). Plaintiffs' response, that "the benefit the tipper hopes to receive" need not "align[] temporally with the illegal insider trading" (Pl.Opp. 17), misses the point: there are no well-pled allegations that Archegos "tipped" defendants in late March to obtain these purported benefits, when Archegos was allegedly resigned to a liquidation and the impending *termination* of its relationships with defendants. (¶¶ 9-10, 140, 153-54.) Moreover, these generalized "benefits" are simply labels—lifted from *Dirks*, 463 U.S. at 663—without pleaded factual support, so do not raise any plausible inferences (Mem. 16). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] At bottom, plaintiffs simply describe the swap-trading services that defendants provided Archegos pursuant to industry-standard contractual arrangements—a "legitimate corporate purpose" that does not reflect a breach of duty as required for tippee liability, s*ee Martoma*, 894 F.3d at 75, let alone that defendants knew of any such breach. *See, e.g.*, *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 592 (S.D.N.Y. 2006) (holding that alleged use of industry standard contracts was insufficient to raise inference of knowledge, recklessness or intent).

## II. PLAINTIFFS DO NOT ALLEGE MISAPPROPRIATION

Plaintiffs fare no better with their misappropriation theory. (Mem. 18-21.) They fail to identify any well-pled, factual allegations supporting an inference that defendants owed Archegos a duty of trust and confidence, instead relying on conclusory labels. (*Compare* Mem.

---

[4] Plaintiffs are also wrong that personal benefit allegations are not subject to scienter or a heightened pleading standard. (Pl.Opp. 15.) *Obus*, which they cite for this proposition, says nothing about the applicable pleading standard, and instead confirms that a tippee's awareness that it "is a participant in the tipper's breach" is an "element of tippee scienter." 693 F.3d at 287. Indeed, the personal benefit test was developed by courts as a means of assessing scienter. *See Dirks*, 463 U.S. at 663 (explaining that scienter inquiry "requires courts to focus on objective criteria, i.e., whether the insider receives a direct or indirect personal benefit from the disclosure").

21 n.9 *with* Pl.Opp. 21-22).[5]  As plaintiffs themselves recognize, "information obtained during an arms-length negotiation" does *not* give rise to an insider trading duty.  (Pl.Opp. 13 n.3 (citing *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 13-14 (2d Cir. 1983)); *see also generally* Mem. 11-12 (citing cases).)  Their sole remaining theory that defendants misappropriated Archegos's information by front-running fails for lack of any allegations of actual trades by any supposedly "favored clients" on March 24 or 25, 2021.  (Mem. 19; Op. 13-14 n.5.)  Plaintiffs respond that they "need not plead dates, times, and places with absolute precision" (Pl.Opp. 22), but they have not pled *any tips, tippees, or trades connected with any tips*.[6]  This Court already rejected nearly identical assertions as insufficient, finding that plaintiffs had pointed to "no specific sales connected to these tips, nor the circumstances of the tips themselves."  (Op. 13-14 n.5 (citing *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 354 (S.D.N.Y. 2008)).)  Plaintiffs have done nothing to cure these defects.

## III. PLAINTIFFS FAIL TO ALLEGE KNOWLEDGE OF ANY BREACH OR INTENT TO DEFRAUD

Plaintiffs' claims fail for the independent reason that the complaints lack facts demonstrating that defendants knew or should have known that Archegos disclosed information to them in breach of a duty and "traded on the information in disregard of that knowledge." (Mem. 10, 17-18 (quoting *Salman v. United States*, 580 U.S. 39, 42 (2016)).)  Nor do the complaints raise the necessary strong, cogent, and compelling inference of scienter required for

---

[5] The cases plaintiffs cite are all distinguishable because they involved facts simply not alleged or present here. *See, e.g.*, *Veleron Holding, B.V. v. Morgan Stanley,* 117 F. Supp. 3d 404, 431, 455 (S.D.N.Y. 2015) (finding fact issue at summary judgment based on Morgan Stanley wearing "two hats" and based "on the words and deeds of Morgan Stanley's own personnel at the time when the alleged insider trading was taking place"). (*See also* Op. at 15 (noting *Veleron* is "highly distinguishable").)

[6] The case plaintiffs cite for this proposition also contained significantly more detailed allegations, including those identifying the speakers, dates, and places related to the misrepresentations at issue. *In re Revlon, Inc. Sec. Litig.*, 2001 WL 293820, at *9 (S.D.N.Y. Mar. 27, 2001).

6

every Section 10(b) claim. (Mem. 21-24.)

*First,* plaintiffs fail to allege that defendants knew Archegos breached a duty to the issuers in providing defendants its own information that it had $120 billion in aggregate exposure (and $10 billion in equity). (¶ 153.) That information does not equate to knowledge that the exposure was concentrated in the same issuers across its counterparties. (Pl.Opp. 20-21.) Indeed, the complaints incorporate the allegations from the DOJ Indictment and SEC Complaint, which make clear that Archegos "deliberately misled" defendants. (Mem. 18; Op. 7.) These allegations foreclose plaintiffs' assertions that defendants learned of Archegos's manipulation scheme through their due diligence, or that Archegos purportedly had a "practice of informing its prime brokers that its holdings were concentrated . . . across all of them"—contentions that are, in any case, not well pled. (Pl.Opp. 18-20.)[7]

The other purported sources of defendants' knowledge (Pl.Opp. 18) likewise fail to support any inference that defendants knew about Archegos's alleged manipulative scheme. In general, 13F reports reflect aggregated holdings across an entity and *do not reveal* what proportion is related to any particular client. As the complaints make clear, the 13F reports cited by plaintiffs contain no such information and do not mention Archegos. (*See* ¶¶ 99, 123-24; *cf.* DOJ Indictment ¶ 27 (Archegos deceived its counterparties by "making it appear that different parties were buying the companies' stock when, in fact, that buying was all dictated by

---

[7]Nor do plaintiffs meaningfully dispute that their allegations of defendants' purported knowledge, based heavily on findings from an internal investigation of Credit Suisse, constitute impermissible group pleading and shed no light on what defendants knew. (Mem. 16-17.) Plaintiffs now insist that these allegations instead demonstrate Archegos's "*modus operandi*" and the "practices of Archegos and its prime brokers" (Opp. 19, 21 n.7), but plaintiffs supply no factual basis to suggest that defendants had the same knowledge or received the same information as Credit Suisse. (*Compare, e.g.*, ¶ 125 (alleging that Archegos informed Credit Suisse that it preferred to distribute its positions "pro rata" across counterparties) *with* DOJ Indictment ¶ 56 (alleging that Archegos falsely suggested to Goldman Sachs that it "was trying to pursue new investment opportunities" when its positions with Goldman Sachs allegedly "consisted of the same [issuers] in which it invested through other Counterparties").

Archegos.").) There also is no allegation that a "recent" European regulatory report was available to defendants in or before the class period (¶ 95). And plaintiffs' claims of "exorbitant fees" (Pl.Opp. 17, 20) have no basis in the complaints, which only allege that defendant raised margin requirements (not fees), meaning that defendants provided Archegos *less credit* to make its trades (¶¶ 45, 105, 257). Plaintiffs are left to argue that defendants must have known because Archegos was "trading large volumes" while stock prices were rising (Pl.Opp. 20), but plaintiffs do not allege that defendants connected those occurrences to any misconduct by Archegos, as opposed to perceived successful trading. *See SEC v. Hwang*, 2023 WL 6124041, at *13 (S.D.N.Y. Sept. 19, 2023) ("[T]his is a case where scienter is the *only* factor that distinguishes legitimate trading from improper manipulation"). Plaintiffs' fixation on distinctions between whether defendants "knew" or "had reason to know" of the purported manipulation (Pl.Opp. 19-20) are thus beside the point, because more is needed to plead securities fraud than conclusory assertions and large trading volumes (Mem. 16-17 (citing cases)).[8] *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (allegations of "short selling—even in high volumes—is not, by itself manipulative" and does not state a claim under Section 10(b)).[9]

*Second*, having failed to sufficiently allege that defendants should have known of Archegos's purported breach of duty, plaintiffs necessarily fail to raise a strong, compelling inference that defendants traded with scienter. This independently dooms their claims. There is

---

[8] Plaintiffs contend that "a 'relaxed' Rule 9(b) standard" governs as to defendants' alleged knowledge (Pl.Opp. 18), but the case they cite confirms that such a standard applies only "if a tip took place under circumstances known only to the defendant and the tipper," *SEC v. One or More Unknown Traders in Sec. of Onyx Pharms., Inc.*, 2014 WL 5026153, at *4 (S.D.N.Y. Sept. 29, 2014), and not where, as here, an indictment and two government complaints comprehensively allege what purportedly transpired between tipper and the tippees. Even if the relaxed standard applied, plaintiffs must still "plead a belief about the content and the circumstances of the tip, coupled with particular facts supporting that belief." *Id*.

[9] Plaintiffs wrongly assert that *ATSI* is inapposite because it is "a market manipulation case in which the plaintiff did not allege particular facts that the defendants manipulated the market" (Pls.Opp. 21 n.7), but that distinction is not meaningful; here, as there, plaintiffs allege nothing more than the use of a lawful trading instrument in large volume.

8

nothing suspicious about the timing and volume of defendants' alleged trades (Pl.Opp. 20), which either were directed by Archegos, or corresponded to the liquidation of defendants' hedge positions after Archegos defaulted and they exercised their early termination rights (¶¶ 3, 92, 146, 155, 178-81). There are no allegations that defendants sought to defraud anyone or did anything different from what they were already going to do if the March 25 call with Archegos had never occurred. Rather, the complaints overwhelmingly support the plausible, nonculpable explanations that defendants themselves were deceived by Archegos, and that they followed the standard and legitimate practice of closing out their hedges to remain "market neutral" and "protect [their] own credit position[s]" upon Archegos's default. (Mem. 22-23.)

Plaintiffs' only new contention is that Morgan Stanley purportedly "created a conflict of interest" by "serving as both Archegos's prime broker and as an underwriter of ViacomCBS" because it purportedly knew that the price of Viacom stock would decline "if Archegos was forced to sell its massive positions." (Pl.Opp. 24.) But, plaintiffs provide no explanation of how this assertion gives rise to a strong inference of scienter, whether based on "motive and opportunity" or "strong circumstantial evidence of conscious misbehavior or recklessness." (Mem. 22-23.) Similarly unavailing is plaintiffs' vague suggestion that Goldman also held off on selling most of its Viacom shares until after March 26 (¶ 186; Pl.Opp. 24), where the complaints only allege that Goldman traded in Viacom on March 26 after Archegos's default. (¶ 182.) None of these assertions suggests that defendants knew or were reckless in not knowing that Archegos was engaged in manipulative trading. Plaintiffs' contention that defendants "careful approach to ViacomCBS demonstrates that they knowingly traded in and tipped in breach of fiduciary duties" (Pl.Opp. 24) is entirely speculative and conclusory, which is the opposite of a "strong inference." *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

## IV. PLAINTIFFS' SECTION 20A AND 20(a) CLAIMS FAIL

Plaintiffs' opposition fails to save their insider trading claims under Section 20A and their control person claims under Section 20(a). The complaints still allege that lead plaintiffs in *Felix* and *Scully* traded *before* any of defendants' allegedly unlawful trades—the same temporal defect that resulted in the prior dismissal of these claims for failure to satisfy Section 20A's contemporaneous trading requirement. (Op. 19-20; Mem. 24-25.)[10] As set forth above, plaintiffs point to no unlawful trades or tipping on March 24, much less in breach of a duty owed to Archegos. But, even if plaintiffs had adequately alleged that defendants tipped favored clients that day, that would only be sufficient for a Section 20A claim against the purported *tippees*. Liability under Section 20A extends only to a "person who violates [the Exchange Act] *by purchasing or selling a security* while in possession of [MNPI]," *not* to someone who allegedly violates the statute by tipping. 15 U.S.C. § 78t-1(a); *see also In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008). As for the control person claim, plaintiffs' naming of a single Morgan Stanley employee mentioned in news articles about investigations unrelated to Archegos—without any further factual allegations regarding his role in the allegedly unlawful trading—is nothing more than the "boilerplate language" that was insufficient the first time around. (Mem. 25; Op. 21.)

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motions to dismiss the second amended complaints with prejudice.

---

[10] Plaintiffs cite to *In re Bear Stearns Co., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, (S.D.N.Y. 2011), but the plaintiff there traded *after* the allegedly improper trades occurred. And contrary to plaintiffs' claims (Pl.Opp. 25 n.10), lead plaintiffs cannot survive dismissal absent standing as to *any* of the claims alleged. *See, e.g.*, *Pub. Emps.' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 480 (S.D.N.Y. 2010).

Dated: October 17, 2023

**DAVIS POLK & WARDWELL LLP**

By: /s/ *Charles S. Duggan*
Charles S. Duggan
Daniel J. Schwartz
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
charles.duggan@davispolk.com
daniel.schwartz@davispolk.com

*Counsel for Defendant Morgan Stanley*


**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

By: /s/ *Carmine D. Boccuzzi, Jr.*
Carmine D. Boccuzzi, Jr.
Michael Cinnamon
Mijin Kang
Olivia Everton
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
cboccuzzi@cgsh.com
mcinnamon@cgsh.com
mkang@cgsh.com
oeverton@cgsh.com

*Counsel for Defendant Goldman Sachs Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 17, 2023, the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINTS was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record.

By: /s/ *Charles S. Duggan*
      Charles S. Duggan